IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUN 2 1 2004

DAVID J. MALAND, CLERK
BY
DEPUTY_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>ET AL., | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| | § | CIVIL ACTION NO. 6:71-CV-5281 |
| v. | §<br>§ | |
| STATE OF TEXAS, ET AL., | §<br>§ | |
| Defendants. | §<br>§ | |

## CROSS-CLAIM OF MUMFORD INDEPENDENT SCHOOL
## DISTRICT AGAINST THE TEXAS EDUCATION AGENCY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Cross-Plaintiff MUMFORD INDEPENDENT SCHOOL

DISTRICT ("MISD"), and files this, its Cross-Claim against the Texas Education

Agency, as follows:

### I.
### JURISDICTION

This Court has jurisdiction over this action by virtue of is continuing jurisdiction

in the underlying matter, United States v. Texas, Civil Action No. 6:71-CV-5281, in the

United States District Court for the Eastern District of Texas.

### II.
### PARTIES

1. Cross-Plaintiff Mumford Independent School District is a political subdivision of

   the State of Texas and a defendant to the Complaint in Intervention, filed by

Hearne Independent School District in the above-referenced matter, and currently pending before this Court.

2. Cross-Defendant Texas Education Agency is a state agency of the State of Texas and is a defendant to the Complaint in Intervention.

## III.
## INTRODUCTION:  THE TEXAS EDUCATION AGENCY'S ENFORCEMENT OF CIVIL ORDER 5281

1. In 1971, this Court issued an order ("the Order") in the above-referenced matter detailing specific actions required of the State of Texas in order to address the Court's concerns of segregation in the public schools. Although the Texas Education Agency ("TEA") developed guidelines to govern student transfers between school districts, as required by the Order, it did little in the way of actually enforcing these guidelines for almost thirty years. Until 2001-2002, TEA accepted a superintendent's signed declaration as a true and correct representation of the information submitted on the transfer form.  TEA had no consistent or objective standards for initiating an investigation of a school district's compliance with its transfer guidelines or the Order; rather, it investigated only upon receiving a complaint from another school district. The Agency's enforcement mechanism had essentially functioned, therefore, in an arbitrary manner.

2. TEA did not discover that numerous school districts were over the "1% guideline" set forth in the Order until the spring of 2001. At this time, TEA

2

determined that, before enforcing its transfer guidelines (which it now does by a strict numerical basis—although an ad hoc one), it would allow students who were in attendance as transfer students to remain in attendance at the receiving district, to avoid disruption to the students' educational process and to the finances of many school districts. TEA set a "baseline" year of 2000-2001. All transfer students reported in attendance for this baseline year were allowed to continue attending as transfer students.

3. Once TEA initiated the new automated transfer reporting system, it discovered additional problems, and it therefore extended forgiveness to transfer students in the 2001-2002 school year, labeling these students as "grandfathered."

## IV.
## TEA'S ACTIONS WITH RESPECT TO ENFORCEMENT OF CIVIL ORDER 5281 IN MUMFORD ISD

1. In November 1998, TEA determined that Mumford ISD had exceeded the 1% guideline but, because the District was "becoming more ethnically balanced," it wasn't in violation of the Order.

2. Just two months later, in February 1999, TEA determined that Mumford was not in compliance with the Order because of the effects its acceptance of transfer students had on the ethnic balance of Hearne ISD. Based on this finding, TEA instructed Mumford not to take any *white* transfer students from Hearne.

3. In 1999 and 2000, Mumford ISD submitted a list of transfer students to TEA, identifying the exemptions—described in TEA guidelines—for which

Mumford understood the students to be eligible. Based on the superintendent's declaration that these students qualified for an exemption, TEA determined Mumford was in compliance with the transfer provisions of the Order.

4.     In 2001, TEA revised its exemption procedures, to make them more exacting.

5.     By letter dated July 16, 2001, TEA notified Mumford that it was not in compliance with the Order and that it was required to return all *white* students not meeting a hardship exemption. Mumford was also instructed to refuse any additional *white* transfers from Hearne ISD or Calvert ISD that did not qualify for an exemption.

6.     Upon receiving a complaint from then-Hearne Superintendent Norris McDaniel, TEA initiated an investigation of Mumford's coding of transfers under the TEA guidelines. It also investigated Mumford's transportation allotment.

7.     Hearne ISD filed another complaint against Mumford in 2002, prompting another on-site investigation. The TEA investigators directed Mumford to recode a number of students, to change their exemption status.

8.     On December 5, 2003, TEA notified Mumford that ADA funds of $291,585 for 71 students would be withheld from Mumford ISD due to the District's alleged continued acceptance of transfer students. Funds were withheld

4

beginning with the January 2004 payment. This amount was calculated based on student attendance data for the 2003-2004 school year.

9.     Despite these actions, TEA nevertheless states, in its Response to the United States' Motion to Enforce Order, that "although the transfers at issue resulted in changes in ethnic composition exceeding the 1% of the Order, such changes do not, *per se*, constitute a violation of this Court's Order, and they certainly do not violate current constitutional standards." TEA Response at 2. By its own admission, therefore, TEA has no authority to withhold funding from Mumford ISD. In fact, TEA goes so far as to state that the transfers at issue would not violate current constitutional standards, and since they do not reduce or impede desegregation, the factors set forth in this Court's Order are not triggered. Despite this admission that it has no authority to take action against Mumford, and given that no violation of the Order has occurred, TEA has nevertheless withheld such funds.

## V. SPECIFIC CLAIMS

Mumford is entitled to declaratory and injunctive relief from this Court that would require Defendant TEA to fund the students in Mumford from whom it has withheld funding. Mumford is entitled to such relief because TEA's actions are a violation of substantive due process, equal protection of the laws, 42 U.S.C. § 2000d ("Title VI"), and this Court's Order.

1. TEA's application of its transfer guidelines, promulgated pursuant to the authority of the Order, violate Cross-Plaintiff's substantive due process rights.

5

As required by the Order, TEA developed guidelines to implement the transfer provision of the Order. These guidelines were developed, but for approximately thirty years, TEA never enforced them. For some reason, it began enforcing them—albeit in an arbitrary and capricious manner—at a time when the TEA itself admits the Order's constitutionality is questionable. TEA's application of these guidelines involves *only* a numerical analysis of a school district's student population. Its review involves no qualitative analysis of any effect on desegregation or resegregation that the Order and relevant Supreme Court authority would require.

2.  By denying funding to Mumford, the Cross-Claimant has been denied its rights to equal protection by the TEA's denial of funding for white students. While white students are the particular target of the TEA's sanction, all students— including minorities—suffer from the overall financial detriment.

3.  By denying Mumford the ability to accept white transfer students, TEA has also violated Title VI. White students who wish to transfer to Mumford are prohibited from doing so solely because of their race. TEA performs no analysis regarding the effect any such transfer would have on desegregation or resegregation: it is simply a student's race that determines eligibility for admission to Mumford.

4.  TEA's action in denying funding is unauthorized by the Order and therefore in violation of its terms. With respect to student transfers, this Court's Order states, in relevant part, that students shall not be permitted to transfer to other

6

school districts: "when the cumulative effect, in either the sending or receiving school district, will be to reduce or impede desegregation." Civil Action No. 5281 at A(1).  TEA's actions do not comport with this standard.

## VI. RELIEF REQUESTED

The acts of Defendant TEA in withholding funds from Mumford ISD were not only committed in violation of this Court's Order, but also violate substantive due process and equal protection, as well as Title VI. Accordingly, Cross-Claimant seeks an injunction requiring TEA to reimburse Mumford for all funds withheld to date and to continue funding *all* students who attend Mumford ISD.

## VII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Mumford prays that it be awarded the state funding that was improperly withheld for *all* students attending Mumford ISD, regardless of their race, as well as attorney's fees and all other relief to which they may show themselves justly entitled.

Respectfully submitted,

FELDMAN & ROGERS, L.L.P.

_____
DAVID M. FELDMAN
ATTORNEY-IN-CHARGE
State Bar No. 06886700
Federal ID No. 2994
RICHARD A. MORRIS
State Bar No. 14497750
Federal ID No. 15004
CAROLYN HANAHAN
State Bar No. 10617725
Federal ID No. 26691
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:    (713) 960-6000
Facsimile:     (713) 960-6025

ATTORNEYS FOR MUMFORD
INDEPENDENT SCHOOL DISTRICT

8

## CERTIFICATE OF SERVICE

I hereby certify that on this the 18th day of June, 2004, by facsimile and regular mail, a true and correct copy of the foregoing was served on counsel listed below by facsimile and/or placing same in the U.S. Mail, with proper postage affixed and addressed as follows:

**TEXAS EDUCATION AGENCY AND STATE OF TEXAS:**
Nancy Juren
General Litigation Division
P.O. Box 12548-Capitol Station
Austin, Texas  78711-2548
*(via facsimile 512/320-0667)*

**HEARNE ISD:**
Roger D. Hepworth
Henslee Fowler Hepworth & Schwartz
816 Congress Avenue, Suite 800
Austin, TX  78701
*(via facsimile 512/708-9037)*

**UNITED STATES:**
Edward G. Caspar
U. S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave NW-PHB
Washington, DC 20530
*(via facsimile 202/514-8337)*

**LEAGUE OF UNITED LATIN AMERICAN CITIZENS:**
Nina Perales / David Hinojosa
MALDEF
140 W. Houston, Suite 300
San Antonio, Texas  78205
*(via facsimile 210/224-5382)*

Attorney for Mumford Independent School District

9