IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ET AL., | § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO. 6:71-CV-5281 |
| v. | § § | |
| STATE OF TEXAS, ET AL., | § § | |
| Defendants. | § § | |

### DEFENDANT MUMFORD ISD'S
### SUPPLEMENTAL POST-TRIAL BRIEF

Defendant Mumford Independent School District ("MISD" or "the District") files

this its Supplemental Post –Trial Brief as follows.

I.

Introduction

Since the trial of this matter and the filing of post-trial briefing, the Fifth Circuit

has issued a ruling providing that a race-conscious magnet school admissions program is

unconstitutional.  *Cavalier v. Caddo Parish School Board* 2005 WL 469611 (5th Cir.

March 1, 2005).  The Fifth Circuit's ruling confirms what Mumford has contended from

the outset of this litigation: over the past thirty-plus years, since the entry of Order 5281

and the era of *de jure* segregation in Texas schools, much has changed, and race

conscious transfer policies (particularly those requiring fixed and rigid ratios that fail to

pass strict scrutiny review) are unconstitutional.  Utilizing the reasoning employed by the

Fifth Circuit in *Cavalier* in the present fact situation compels the conclusion that the

application of the transfer guidelines in Order 5281 as implemented by the TEA and sought by the United States and Hearne ISD, cannot stand.

## II.

### Argument

In *Cavalier v. Caddo Parish School Board*, the parents of a white student challenged the Caddo Parish school board's decision to deny admission of the student to a magnet school because his achievement score was not high enough, although it would have been high enough for a black student applicant.  Similar to the application of Order 5281 here, it was undisputed that the school board used race as a factor in admissions decisions as a means of achieving a particular racial balance at its magnet school.

In analyzing the challenge to the policy, the Fifth Circuit applied the strict scrutiny review that Mumford argues should be employed here, noting that "[i]t is by now well-established that '*all racial classifications* reviewable under the Equal Protection Clause must be strictly scrutinized.'"  *Id*. at p. 4 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 123 S. Ct. 2411, 2427, 156 L. Ed. 2d 257 (2003) quoting *Adarand Constructors, Inc. v. Pena*, 575 U.S. 200, 115 S. Ct. 2097, 2111, 132 L. Ed. 2d 158 (1995)) (emphasis in original). Strict scrutiny review required the Caddo Parish school board to demonstrate that its use of race furthered a compelling governmental interest and that its policy was narrowly tailored to further that interest.  *Id*. (quoting *Gratz*, 123 S. Ct. at 2427, in turn quoting *Adarand*, 115 S. Ct. at 2113).

In defense of its admissions policy, the board pointed to the existence of a 1981 desegregation consent decree as its compelling governmental interest.  The Fifth Circuit

rejected this argument concluding that because the portion of the consent decree that

dealt with the board's magnet schools had been terminated by a subsequent order, the

existence of the consent decree did not provide a compelling governmental interest for

the board's race-conscious admissions policy.[1]  Having concluded that the consent decree

could not justify the policy, the Fifth Circuit then examined whether current vestiges of

discrimination warranted the policy.  Determining that the board had not identified any

vestige of discrimination traceable to past segregation, and adopting a heightened burden

of proof, the Court concluded that the board failed to show that it had a "'*strong basis in*

*evidence* showing that a current social ill has in fact been caused by [discriminatory]

conduct.'"  *Id*. at p. 9 (quoting *Wessman v. Gittens*, 160 F.3d 790, 800 (1st Cir. 1998)

(quoting *City of Richmond v. J. A. Croson Co.*, 488 U.S. 469, 109 S. Ct. 706, 725, 102 L.

Ed. 2d 854 (1989)) (emphasis added).[2]

As an alternative ground for finding the admissions policy unconstitutional, the

Court concluded that even if the 1981 consent decree was still applicable to the magnet

school, the board's policy was not narrowly tailored to remedy the present effect of past

discrimination.  *Id*. at p. 10 (quoting *Grutter v. Bollinger*, 539 U.S. 306 123 S. Ct. 2325,

2342, 156 L. Ed. 2d 304 (2003) (quoting *Regents of Univ. of Col. v. Bakke*, 438 U.S. 265,

98 S. Ct. 2733, 2761, 57 L. Ed. 2d 750 (1978) (Powell J.)).  Concluding that the board

---

[1] The 1981 consent decree provided that it could be terminated with respect to the magnet schools if projected enrollments were met.  In 1990, following the filing of a joint motion by the United States and the school board, the district court entered an order providing, among other things, that the 1981 consent decree was terminated as to the parish's magnet schools.

[2] It should be noted that the Fifth Circuit placed the burden on the school board to justify its race conscious admissions policy having concluded that it would be "manifestly unfair and illogical to place the burden on the plaintiffs to prove that there was no conceivable justification for the board's use, over a decade after the 1990 order, of a rigid racial quota admission system . . . ." *Id*. at pp. 20-21 n. 17.

had failed to provide any evidence that it considered any race-neutral means of achieving

the board's desired racial balance, the Court held the admissions policy unconstitutional

and noted that the use of a quota system "cannot be said to be narrowly tailored to any

goal except perhaps outright racial balancing." *Id.* at p. 10.

In rejecting racial balancing as a proper reason for using race as a factor in

admissions policies, the Court was clearly influenced by the passage of time between the

signing of the consent decree and the board's continuing use of racial quotas:

> While "the use made of mathematical ratios" as "***no more than a starting***
> ***point*** in the process of shaping a remedy, rather than an inflexible
> requirement," might be appropriate in certain contexts, the school board's
> use of a racial quota supposedly pursuant to the 1981 consent decree ***but***
> ***more than twenty years after*** the signing of the decree and more than a
> decade after the 1990 order – is hardly a "starting point" and appears rather
> to be an improper "inflexible requirement."

*Id* at p. 10 (internal citation omitted; emphasis in original).

In the present case, evidence adduced at trial reveals that the TEA continues to use

(and the United States and Hearne ISD continue to advocate) race conscious

"mathematical ratios" as inflexible tools for achieving a desired racial mix despite the

passage of more than thirty years since this Court addressed segregative transfers in

school systems other than Hearne ISD and Mumford.  Like Caddo Parish, Hearne ISD,

the United States, and the TEA fail to demonstrate a "strong basis in evidence"

warranting continued use of  race-conscious transfer guidelines, much less that the

guidelines as applied are narrowly tailored to meet any desired goal regarding racial mix.

Respectfully submitted,

FELDMAN & ROGERS, L.L.P.


/s/ Richard A. Morris_____
DAVID M. FELDMAN
ATTORNEY-IN-CHARGE
State Bar No. 06886700
RICHARD A. MORRIS
State Bar No. 14497750
CAROLYN HANAHAN
State Bar No. 10617725
5718 Westheimer, Suite 1200
Houston, Texas  77057
Telephone:    (713) 960-6000
Facsimile:     (713) 960-6025

ATTORNEYS FOR MUMFORD
INDEPENDENT  SCHOOL  DISTRICT  AND
PETE J. BIENSKI, JR.

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the _____ day of April, 2005, a true and correct copy of the foregoing was served on all counsel of record *via* electronic transmission as follows:

**TEXAS EDUCATION AGENCY AND STATE OF TEXAS:**
Nancy Juren
General Litigation Division
P.O. Box 12548-Capitol Station
Austin, Texas  78711-2548

**HEARNE ISD:**
Roger D. Hepworth
Henslee Fowler Hepworth & Schwartz
816 Congress Avenue, Suite 800
Austin, TX  78701

**UNITED STATES:**
Edward G. Caspar
U. S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave NW-PHB
Washington, DC 20530

**LEAGUE OF UNITED LATIN AMERICAN CITIZENS:**
Nina Perales / David Hinojosa
MALDEF
140 W. Houston, Suite 300
San Antonio, Texas  78205

/s/ Richard A. Morris
Attorney for Mumford Independent School District and Pete J. Bienski, Jr.

6