FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAY 3 0 2006

DAVID J. MALAND, CLERK

BY
DEPUTY

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al. | § | |
| | § | |
| Plaintiff, | § | |
| and | § | |
| | § | |
| GI FORUM and LULAC, | § | Civil Action No. |
| | § | 6:71-CV-5281-WWJ |
| Plaintiff-Intervenors | § | |
| | § | |
| v. | § | |
| | § | |
| THE STATE OF TEXAS, et. al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court for consideration is a Motion to Stay District Court Proceedings Pending Collateral-Order Appeal, Docket No. 602, filed by Defendants, The State of Texas and the Texas Education Agency. For the reasons stated herein, Defendants' motion must be denied.

### Discussion

On April 14, 2006, the Court set Plaintiff-Intervenors GI Forum and LULAC's Motion for Further Relief for a hearing on July 24, 2006, and ordered the parties to complete discovery by June 23, 2006. The State of Texas and the Texas Education Agency ("TEA"), Defendants in this civil action, opposed the motion on several grounds, including: Rule 7(a) of the Federal Rules of Civil Procedure; Eleventh Amendment Immunity; and, unspecified substantive defenses amounting to a contention that Plaintiff-Intervenors have not submitted sufficient evidence to warrant the relief requested by their motion. The Court did not address the State's Eleventh

-1-

Amendment immunity argument before setting the motion for a hearing.[1] In the instant motion, Defendants now assert that by setting the motion for a hearing, the Court "effectively denied the State's immunity defense," and further asserts that in order to "prevent the State from effectively losing its immunity from suit, the Court should stay all proceedings pending the resolution of the State's interlocutory collateral-order appeal of the Court's order." Docket No. 602.

## Background

This matter is but one part of this Court's effort to enforce federal statutory and constitutional norms in the Texas public education system, an undertaking that commenced with a suit filed by the United States in the Eastern District of Texas in 1970. That action involved nine all-black school districts located in or around the northeastern part of the state, and resulted in a comprehensive order directed to TEA concerning its responsibilities with regard to all Texas school districts. The Court entered a permanent injunction, and retained jurisdiction over TEA, and thus, indirectly, over the Texas public education system. *See United States v. Texas*, 321 F. Supp. 1043 (E.D. Tex. 1970), *aff'd as modified*, 447 F.2d. 441 (5th Cir. 1971).[2]

---

[1] In the Court's view, the setting of LULAC's Motion for a hearing is not an effective denial of the State's immunity defense. This is especially true in light of the Court's expectation that the State will advance the argument that the Court's 1971 Order fails to provide jurisdiction over Plaintiff-Intervenors' Motion for Further Relief. If Defendant prevailed on that argument, then this Motion would not come under the purview of the Court's continuing jurisdiction over TEA stemming from the 1971 Modified Order in the No. 5281 litigation. Plaintiff-Intervenors's Motion would necessarily be considered a new, and separate cause of action; one which may possibly be subject to the State's claim of immunity. However, if the State fails in its jurisdictional argument, this Motion would be properly considered part of the No. 5281 litigation. The State would not, then, be entitled to an immunity defense, having submitted to this litigation, and thereby waiving whatever immunity from suit it might have had, long ago. *See infra*.

[2] This action, and those it gave rise to, are referred to in this order as the "No. 5281 litigation."

This development precipitated a number of actions concerning the equality of myriad educational services in school districts around the State. One such action was commenced on June 3, 1975, when Plaintiff-Intervenors GI Forum and LULAC filed a Motion to Enforce Decree and for Supplemental Relief in this action to address denials of equal educational opportunity to Mexican-American students in the Texas public schools. That Motion asserted the following legal bases: this Court's Modified Order of 1971, Title VI of the 1964 Civil Rights Act, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and the Equal Educational Opportunities Act of 1974 (20 U.S.C. § 1703(f)), and challenged the scope and implementation of the Texas Bilingual Education Act of 1973 as insufficient to secure the rights of limited English-proficient ("LEP") Mexican-American students.

Following a lengthy hearing, the Court held that Defendants had violated the constitutional and statutory rights of Plaintiff-Intervenors, by, *inter alia*, failing to take "appropriate action" to address the language difficulties of Spanish-speaking students, and to remove the disabling vestiges of past *de jure* discrimination against Mexican American students. The Court issued a remedial decree compelling the State to take affirmative steps to ensure the rights of such students. *United States v. Texas*, 506 F. Supp. 405 (E.D. Tex. 1981).

Defendants moved to vacate the injunction on the ground that a new state law, the 1981 Bilingual and Special Language Programs Act (S.B. 477), which created a new program for addressing the learning difficulties of LEP students, "must be given a chance to work before it can be evaluated a success or failure." *See United States v. Texas*, 523 F. Supp. 703, at 726 (E.D. Tex. 1981). The Court, however, found that S.B. 477 failed to meet the State's requirements under the Equal Educational Opportunities Act because "it did not significantly increase the

-3-

resources allocated to carry out" the law, nor did it provide for remedial programs for LEP students "who fall behind in academic areas while becoming proficient in English." *Id.* at 736-37.

In 1982, the Court of Appeals for the Fifth Circuit vacated this Court's injunction, agreeing with Defendants that S.B. 477 should be given the chance to address the significant problems found by this Court. *United States v. Texas*, 680 F.2d 356 (5th Cir. 1982). Among the factual findings left undisturbed by the Court of Appeals was evidence that "the 1973 Texas bilingual education program was pedagogically unsound, largely unimplemented, and unproductive in its results." *Id.* at 371. Importantly, the Court of Appeals also noted that "one hour of intensive English per day for grades four though twelve was not adequate," and that TEA lacked an adequate system for monitoring LEP students' progress, or even for identifying them in the first place. *Id.* at 371-72. The remedial decree was vacated, nonetheless, on the rationale that S.B. 477 "goes significantly beyond the 1973 scheme ... and compels TEA to take certain specific measures, including on-site monitoring, to insure compliance."[3] *Id.* at 372.

On February 9, 2006, LULAC and GI Forum, as Plaintiff-Intervenors, filed a Motion for Further Relief, contending that since the Fifth Circuit's ruling in 1981, there has been an abandonment by TEA of on-site monitoring to ensure compliance with the State's bilingual education program. Docket No. 588. Plaintiff-Intervenors assert that this failure violates the

---

[3] The Court of Appeals held that "Undoubtedly there was adequate evidentiary support for a conclusion that in some areas local programs for remedying the educational handicaps of limited English-speaking students were deficient.... Where the court erred, however, was in its denial of the state's post-trial motion to vacate the injunctive remedy on the ground of mootness. The TEA argued, in our opinion persuasively, that the Texas Legislature's enactment of the 1981 Bilingual and Special Language Programs Act made the court's injunctive relief unnecessary." 680 F.2d at 372.

Equal Educational Opportunities Act, 20 U.S.C. § 1703(f), as well as the existing court orders in this case.

Despite the fact that the State has submitted to this Court's jurisdiction for decades, it now argues that Plaintiff-Intervenors' Motion "fails to overcome the State's Eleventh Amendment Immunity." Docket No. 590. Though the Court failed to address the State's newly concocted Eleventh Amendment immunity argument in setting this matter for a hearing, the State, nonetheless, appealed to the Fifth Circuit on the ground that the Court constructively denied such immunity. Defendants simultaneously filed a motion to stay district court proceedings pending that appeal. The Court now formally rejects the State's claim of immunity, and denies the Motion to Stay.

*Eleventh Amendment Immunity Analysis*

1. Defendants Have Not Asserted a Precise Statement of Their Alleged Immunity in Light of this Court's Continuing Jurisdiction Over TEA.

Defendants have asserted only that the Eleventh Amendment protects them from defending against Plaintiff-Intervenors' Motion for Further Relief on the most abstract of grounds with regard to this decades-old litigation, to which the State has *always* been a party: that "[b]oth the State and TEA (as its agency) enjoy Eleventh Amendment immunity." Docket No. 590 at 7-8 (citing *Cozzo v. Tangipahoa Parish Council-President*, 279 F.3d 273, 280-81 (5th Cir. 2002) for the proposition that "[w]hen a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity."). The Court is unsure precisely how to construe this general claim of immunity. Certainly one possibility, based on the broad and generic language cited in its Response, is that the State no longer considers itself subject to this Court's continuing jurisdiction as established in

-5-

the 1971 Modified Court Order. See Docket No. 590. This is not a tenable outcome, as the Court cannot undo decades of Fifth Circuit precedent[4] in this litigation without so much as a hearing, or any argument as to why such an outcome is warranted.

Another possible construction of the State's vague immunity argument may be that the State does not consider the Motion for Further Relief to properly follow from the 1971 Modified Order, and must therefore be considered a new, and separate cause of action; one that may be susceptible to the defense of sovereign immunity, even if motions that are properly part of the No. 5281 litigation are not subject to that defense. Though this argument is of dubious merit, in light of the afore-mentioned litigation in No. 5281 concerning the State's bilingual education program,[5] the Court would surely consider such an argument. Such possibilities are pure conjecture at this stage, however, as Defendants have done nothing to specify *why* it should be immune from a hearing on Plaintiff-Intervenors's Motion on Eleventh Amendment grounds.[6]

2.   Waiver.

---

[4]   As noted, the No. 5281 litigation began in 1970, with the Fifth Circuit approving a modified court order that placed TEA under the continuing jurisdiction of the Court. Furthermore, when the parties in 1981 litigated the sufficiency of the 1973 program as an offshoot of the original No. 5281 action, the State did not enjoy immunity from that action. See *United States v. Texas*, 680 F.2d 356

[5]   *See, e.g., United States v. Texas*, 680 F. 2d 356 (5th Cir. 1982).

[6]   In their Motion to Stay, Defendants make more general statements of Eleventh Amendment immunity law without advancing any argument as to why immunity applies in this case. For example, Defendants state that "[w]hen a trial court denies a state's claim of Eleventh Amendment immunity, that ruling is immediately appealable under the collateral-order doctrine." Docket No. 602 (citing *Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993)). While that may be a correct statement of law in so far as it applies, Defendants have given this Court no reason to think that principle applies to this case. Simply saying it does not make it so.

A claim of Eleventh Amendment immunity does not automatically divest the district court of original jurisdiction. The Eleventh Amendment instead grants the State the legal power to assert the defense of sovereign immunity, should it choose to do so. This means, of course, that the State can waive the defense, whether through express terms, or by its conduct. *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 389 (1998); *In re SDDS, Inc.*, 225 F. 3d 970, 972-73 (8th Cir. 2000). Where, as here, the State actively litigates the merits of the plaintiff's action in federal court for many years, then attempts to raise the Eleventh Amendment immunity defense as a way to avoid the continuing jurisdiction of the Court after injunctive relief has been granted, the immunity defense must be deemed to have been waived. Therefore, to the extent that the State asserts the immunity defense in order to avoid the Court's continuing jurisdiction over TEA, that argument is rejected. Because the State has not fully developed its immunity argument, the Court reserves judgment as to a potentially more colorable immunity argument, if one is presented at the time of, or before, the July 7 hearing.

3. Equal Educational Opportunities Act.

In addition to being waivable by the State, Eleventh Amendment immunity may also be abrogated by Congress acting pursuant to its enforcement power under section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Here, not only has the State waived its immunity by consenting to this litigation, but Congress has also abrogated such immunity by enacting the Equal Educational Opportunities Act of 1974 ("EEOA"). The Act states, in pertinent part, that:

> No state shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by ... (f) the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs.

20 U.S.C. § 1703(f). The enforcement prong of the EEOA reads:

> An individual denied an equal educational opportunity, as defined by this subchapter may institute a civil action in an appropriate district court of the United States against such parties, and for such relief, as may be appropriate. The Attorney General of the United States (hereinafter in this chapter referred to as the "Attorney General"), for or in the name of the United States, may also institute such a civil action on behalf of such an individual.

20 U.S.C. § 1706. It is not surprising, considering the plain language of the statute, that all courts to have considered the issue have uniformly held that this Act abrogates the Eleventh Amendment immunity of state education agencies. *See, e.g., Gomez v. Illinois Bd. of Education*, 811 F. 2d 1030, 1035-38 (7th Cir. 1987) (holding that Congress abrogated sovereign immunity to the extent necessary to effectuate the purposes of the Act, and that "any other interpretation would render that enactment a dead letter *ab initio*."); *Los Angeles Branch NAACP v. Los Angeles Unified School*, 714 F.2d 946, 950-52 (9th Cir. 1983), *cert. denied*, 467 U.S. 1209 (1984).

Defendants contend, simply, that Plaintiff-Intervenors' "Motion does not cite any Fifth Circuit authority for the proposition that the EEOA abrogates this immunity." Docket No. 590 at 8. In considering whether a class of students had standing to sue a school district to enforce a separate provision of the EEOA, however, the Fifth Circuit has held that:

> The Equal Educational Opportunities Act (EEOA) explicitly provides in s. 1703(d) that "discrimination by an educational agency on the basis of race, color or national origin in the employment of faculty or staff" constitutes a denial of equal educational opportunity. The statute also expressly provides a private right of action for persons denied such an "equal educational opportunity" in s. 1706. Thus the class of students here clearly have standing to complain of, and a private cause of action for relief from, alleged discrimination by [the school district] in the hiring and promotion of teachers and staff under this statute.

*Castaneda v. Pickard*, 648 U.S. F. 2d 989, 999 (5th Cir. 1981). The *Castaneda* Court

-8-

further noted that, despite all required sensitivities to construing statutes so broadly as to impose affirmative obligations upon states, "it is undisputed ... and indeed undisputable, that in enacting the EEOA, Congress acted pursuant to the powers given it in s. 5 of the Fourteenth Amendment." *Id.* at 1008, n.9. Thus, the Fifth Circuit recognizes that the EEOA creates a cause of action against state agencies, and that the Act is a proper exercise of Congress's enforcement power under the Fourteenth Amendment, which can abrogate Eleventh Amendment immunity. When considered along side case law from other circuits which plainly states that the EEOA abrogates the immunity of state education agencies, the Court sees no plausible argument that immunity has not been abrogated in this case.[7]

*The Court Retains Jurisdiction to Conduct the Hearing*

In light of the decades of litigation to which the State has submitted in this matter, its most recently advanced Eleventh Amendment immunity assertion must be viewed with skepticism. Defendants' strategy in advancing the immunity claim appears to argue directly to the Fifth Circuit for a permanent end to this decades-old litigation on the basis of Eleventh Amendment immunity, without first advancing the merits of the immunity argument to this Court.[8] Defendants cannot seriously believe that, before having convinced *any* court that

---

[7] Furthermore, as Plaintiff-Intervenors point out, the State has admitted *in this litigation* that an EEOA 1703(f) claim is "properly before the Court." Docket No. 604 at 4, n.3 (citing Defendants' Motion to Stay Order of April 17, 1981, Pending Appeal and/or Pending Consideration of Motion to Vacate, filed July 3, 1981).

[8] As noted, the Court failed to specifically address Defendant's Eleventh Amendment immunity argument in setting Plaintiff-Intervenors' Motion for a hearing. Defendants claim that this was an effective denial of immunity, and such a denial is immediately appealable. Had the Court explicitly denied Defendants' immunity argument -- which the Court considered impossible based on the vagueness of Defendants' argument, and not having heard how such immunity might operate within this civil action – Defendants surely would have

-9-

Plaintiff-Intervenors's Motion is beyond the Court's jurisdiction stemming from the 1971 Modified Order, that it is immune from a hearing on the issues raised by the Motion for Further Relief, and the pleadings associated with it. Furthermore, the State fails to advance any argument that the EEOA does not abrogate TEA's immunity in this case, despite the overwhelming authority to the contrary.

Based on the circumstances under which Defendants' presented their claim of Eleventh Amendment immunity, and Defendants' abject failure to assert any argument as to why immunity applies in this case *now*, the Court can only consider Defendants' Motion to Stay as the final prong of a stratagem designed to avoid the rapidly approaching hearing on Plaintiff-Intervenors' Motion for Further Relief. District courts, however, "are not helpless in the face of manipulation.... If the claim of immunity is a sham ... the notice of appeal does not transfer jurisdiction to the court of appeals, and so does not stop the district court in its tracks.... Similarly, a notice of appeal may be so baseless that it does not invoke appellate jurisdiction." *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989); *cf.*, *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) (en banc) (holding that although double jeopardy is an immediately appealable issue, as is sovereign immunity, denial of a double jeopardy motion does not divest the district court of jurisdiction where the district court has found the motion to be frivolous).

The Court finds that Defendants' claim of Eleventh Amendment immunity is frivolous because Defendants have done nothing more than state broad legal propositions (without applying them to this matter), while ignoring the history of this litigation, including their own

---

appealed that judgment. In this face of such manipulation, the Court erred on the side of giving Defendants the opportunity to advance a fuller immunity argument at a hearing.

-10-

past acquiescence to EEOA claims, as well as the case law that uniformly holds that the EEOA abrogates the immunity of state education agencies. More than that is required from Defendants to avoid this Court's jurisdiction.

### Conclusion

For the reasons stated herein, Defendants' Motion to Stay District Court Proceedings shall be, and is hereby, **DENIED**. It is further

**ORDERED** that this Court retains jurisdiction to conduct the hearing scheduled for July 7, 2006.

**SIGNED** this 30th day of May, 2006.

William Wayne Justice
Senior United States District Judge

-11-