IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| *Plaintiff,* | § | |
| | § | |
| and | § | |
| | § | Civil Action No. |
| LULAC-GI FORUM | § | 6:71-CV-5281 WWJ |
| *Plaintiff-Intervenors,* | § | |
| | § | |
| v. | § | |
| | § | |
| THE STATE OF TEXAS, et al., | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION

Before the Court for consideration is Defendants' Motion to Modify Order in the above styled and numbered civil action. (Docket No. 738.) In its motion, Defendants ask this Court to amend the Modified Desegregation Order ("Modified Order") to limit the Texas Education Agency's ("TEA's") responsibility for enforcing the Modified Order's provisions only as to the nine original school district defendants, or their legal successors, in this action. Defendants assert that the Fifth Circuit's recent decision in *Samnorwood Independent School District v. Texas Education Agency (Samnorwood)*, 533 F.3d 258 (5th Cir. 2008), compels this result. Upon careful consideration of the motion, the United States' Response in Opposition (Docket No. 754), Plaintiff-Intervenors' Response in Opposition (Docket No. 756), Defendants' Reply (Docket No. 759), the relevant case law, and all pertinent parts of the record, the Court finds that Defendants' Motion to Modify Order should be, and hereby is, GRANTED IN PART and DENIED IN PART.

I.

The complex factual and procedural background of this case begins thirty-eight years ago, with a suit filed in the United States District Court for the Eastern District of Texas. The United States brought suit against nine all-black school districts, their various governing boards and officials, the State of Texas, and the TEA, alleging that the school districts had not taken steps to dismantle their dual systems and that the State–though TEA–had not adequately overseen and supervised districts within the State to ensure that "no child is denied on the ground of race the benefits of programs supported by Federal funds." *United States v. Texas*, 321 F. Supp. 1043, 1045 (E.D. Tex. 1970).

Although the action was based particularly on the actions of TEA and other local authorities in connection with the nine all-black districts, it was also based on the statewide actions of the State of Texas and TEA. The Court specifically noted that TEA is "a proper party to this action because it is charged with fulfilling the duty placed on the State by the Constitution of the State of Texas (Art. 7, § 1) to operate a system of public schools." *Id.* at 1046. After finding that "[t]he defendant [TEA] has, in each instance, financed, provided textbooks for, accredited, and otherwise assisted in the operation of the all-black districts," the Court went further, stating that TEA "has made no attempt to exercise a supervising function to see that no agency of the State pursues actions and practices which contravene the requirements of Title VI and the Fourteenth Amendment." *Id.* at 1048.

The Court, therefore, crafted an equitable remedy consisting of two parts. The first part of the Order related to the original nine school district defendants and required them and the county boards of education to collaborate with TEA to ensure that these districts operated in accordance with Title VI of the Civil Rights Act and the Fourteenth Amendment to the United States Constitution. *Id.* at 1056. The second part of the Order–the part that Defendants wish to be relieved

of–was directed at TEA "as the chief supervisory body of public elementary and secondary education in Texas and as initial recipient and distributor of Federal financial assistance to school districts throughout the State." *Id.*

In determining that the remedial Order should have statewide effect, the Court stated: "[B]ecause of the contribution to the continuation of vestiges of segregation made by TEA as exemplified by its support of or acquiescence in both territorial and scholastic transfers, the relief in this case must also involve the general administration of public education by the State Agency and its use of its power to compel compliance with Federal law at all levels of the public educational system." *Id.* at 1058. The Court proceeded to describe the State's broad statewide obligations under the Court's Order:

> The State is obligated to oversee the actions of its agencies to insure against violations of the constitutional rights of individuals. Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment impose upon the State of Texas an obligation to insure that the actions of its agencies do not deprive any person of equal protection of the law. When evidence shows that these constitutionally guaranteed rights are being denied or abridged under color of state law and that children are being denied equal educational opportunities with the approval, acquiescence or direct support of a state agency, it is the affirmative duty of that state to take "whatever step might be necessary to . . . [eliminate] racial discrimination . . . root and branch." *Green v. County School Board of New Kent County*, [391 U.S. 430, 437-38 (1968)]. It is appropriate that the court place full responsibility for obtaining school desegregation in compliance with constitutional requirements on the state agency.

*Id.* at 1056-57 (citations and footnotes omitted).

The Court's intention that the second part of the Order have statewide effect was clear: "This Court can conceive of no other effective way to give the plaintiffs the relief to which they are entitled under the evidence in this case than to enter a uniform state-wide plan for school desegregation, made applicable to each local county and city system not already under court order to desegregate

and to require these defendants to implement it." *Id.* at 1057. The Order thus required TEA to reevaluate desegregation within the State in the areas of student transfer and assignment, faculty, transportation, curriculum, and extra-curricular activities. *Id.* at 1060.

The original injunctive order was modified by this Court, *United States v. Texas*, 330 F. Supp. 235 (E.D. Tex. 1971), by the United States Court of Appeals for the Fifth Circuit, *United States v. Texas*, 447 F.2d 441 (5th Cir. 1971), and again by this Court on August 9, 1973 (Amendments to Modified Order of July 13, 1971 (Aug. 9, 1973)).[1] None of these modifications, however, affected or called into question Defendants' statewide responsibilities. In fact, in 1971, Defendants appealed to the Fifth Circuit to avoid their duties under the Order, but the Fifth Circuit upheld the statewide order (with modifications). *Texas*, 447 F.2d at 441-42. The Supreme Court, per Justice Black, denied TEA's application for a stay of the Order, stating: "It would be very difficult for me to suspend the order of the District Court that, in my view, does no more than endeavor to realize the directive of the Fourteenth Amendment and the decisions of this Court that racial discrimination in the public schools must be eliminated root and branch." *United States v. Edgar*, 404 U.S. 1206, 1207 (1971).

II.

Despite the Fifth Circuit's original approval of TEA's statewide responsibilities under the Modified Order, Defendants assert that intervening changes in decisional law, culminating in the Fifth Circuit's decision in *Samnorwood*, compels this Court to modify the Modified Order so as to make TEA responsible for implementing and enforcing its remedial provisions only as to the original defendant school districts, or their legal successors.

---

[1] The original injunctive order as modified will be referred to herein as the "Modified Order."

Defendants bring this motion pursuant to Federal Rule of Civil Procedure 60(b)(5), which states:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]

The Supreme Court has noted that "it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show a significant change either in factual conditions or in law." *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (internal quotations omitted).

Modification of an injunction is within the discretion of the trial court. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008). A trial court, however, abuses its discretion when it refuses to modify an injunction in light of relevant legal changes. *Agostini*, 521 U.S. at 215.

III.

The case upon which Defendants rely, *Samnorwood Independent School District v. Texas Education Agency*, involved the intervention by two rural school districts to challenge the decision by TEA to withhold state funding for their failure to report transfers of students into their districts. 533 F.3d 258, 262-63 (5th Cir. 2008).

Pursuant to the Modified Order, TEA is responsible for monitoring all student transfers and must refuse to fund transfers "when the cumulative effect, in either the sending or receiving school or school district, will be to reduce or impede desegregation, or to reinforce, renew, or encourage the continuation of acts and practices resulting in discriminatory treatment of students on the ground of race, color, or national origin." In order to comply with these requirements, "TEA requires each school district to inform TEA whenever it receives a transfer student." *Samnorwood*, 533 F.3d at

261. When the two school districts failed to report several student transfers, TEA withheld a substantial amount of state funding based on the number of unreported transfers. Consequently, the two school districts intervened in this case, seeking not only to have the fines vacated, but also "a declaratory judgment holding that the student transfer provisions of the Modified Order exceeded the district court's desegregation jurisdiction on its face and as applied by TEA, a decree vacating the student transfer provisions of the Modified Order, and a permanent injunction restraining TEA from regulating student transfers under the Modified Order." *Id.* at 264.

This Court found that, because of the "Sparsity Adjustment,"[2] the transfers at issue for the two school districts should not have affected state funding for either district, and, consequently, TEA wrongfully withheld state funds from the districts. *United States v. Texas*, 445 F. Supp. 2d 711, 722-25 (E.D. Tex. 2006). Although this Court ordered TEA to restore the funding previously withheld, the two school districts appealed from the denial of the declaratory and injunctive relief they sought.

On appeal, the Fifth Circuit reversed this Court, granting the two school districts limited declaratory relief. Noting that the two school districts had not been a party to the original 1970 litigation, had desegregated voluntarily well before the commencement of the 1970 litigation, had never been under a desegregation order, and had never been shown to have acted with discriminatory intent in accepting student transfers, the Fifth Circuit held that the two school districts "shall no longer be subject to the Modified Order's student transfer provisions or TEA's regulations promulgated to enforce those provisions." *Samnorwood*, 533 F.3d at 269.

---

[2] Under TEXAS EDUC. CODE ANN. § 42.105, which is known as the "Sparsity Adjustment," schools districts whose student populations fall within certain ranges of enrollment are to receive a certain minimum level of funding.

IV.

Defendants assert that the reasoning of the Fifth Circuit's *Samnorwood* decision applies well beyond the two school districts at issue in that case, essentially eroding the foundation for the Modified Order's requirement that TEA enforce its remedial provisions against school districts other than the original parties to the 1970 litigation, or their legal successors. (Defs.' Mot. to Modify Order 12) ("For school districts that were not defendants in the original 5281 suit and who have not been subsequently found by this court to be segregated, or to have intentionally discriminated with respected [sic] to the subjects covered by the Order, TEA would have no more authority to enforce the other provisions of the Order than it does to require Samnorwood and Harrold to comply with the section on student transfers."). This Court, however, does not agree that the *Samnorwood* decision has effectuated such a significant change in the law to require this Court to modify the Modified Order in such a drastic manner.

First, the Fifth Circuit in *Samnorwood* explicitly limited its holding to the two school districts at issue:

> Our decision today *only holds* that the prophylactic provisions created by the Modified Order to remedy the segregative conduct on the part of TEA and all-black schools in East Texas should not be imposed on *these two panhandle school districts* that had long previously already desegregated and have never since been found to have acted with segregative intent.

533 F.3d at 269 (emphasis added). The Fifth Circuit so limited its decision despite the fact that the school districts in *Samnorwood* sought much more expansive relief, including "a declaratory judgment holding that the student transfer provisions of the Modified Order exceeded the district court's desegregation jurisdiction on its face and as applied by TEA, a decree vacating the student transfer provisions of the Modified Order, and a permanent injunction restraining TEA from

regulating student transfers under the Modified Order." *Id.* at 264. The school districts sought this expansive relief based on the *same argument* that Defendants advance here today–namely, that "[t]he transfer provisions of the Modified Order are not applicable in Texas school districts that were not parties to Civil Action 5281, against which no Constitutional violation has ever been charged or proved, and in which no vestige of any former Constitutional violation has been shown to exist." (First Am. Compl. in Intervention of Harrold, Kelton, Samnorwood and Spade Indep. Sch. Dists. ¶ 29b.) The Fifth Circuit, however, did not grant the expansive relief requested. As this is substantially the same conclusion and relief sought by Defendants today, their argument that the reasoning of *Samnorwood* compels this result is unpersuasive. This Court sees no reason to take the exact same step that the Fifth Circuit itself neglected to take.

Nor does the Court agree with Defendants' characterization of the *Samnorwood* decision. Defendants assert that "the *Samnorwood* opinion makes it clear that TEA's authority to enforce the Modified Order is limited to the original school districts at issue." (Defs.' Mot. to Modify Order 11.) According to Defendants, "two facts about the appellant school districts put them beyond the reach of TEA's enforcement of the Modified Order": (1) "they were not defendants in the original 5281 lawsuit," and (2) "they have never been declared segregated or found to have intentionally discriminated on the basis of race in their acceptance of inter-district transfers." (*Id.* 10.) Defendants, however, fail to recognize that also central to the *Samnorwood* court's decision was the fact that the appellant school districts had desegregated more than three years prior to the 1970 litigation and were therefore unitary systems at the time this Court issued its remedial decree.

It is well settled that "the nature of the violation determines the scope of the remedy." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971). Additionally, the Fifth Circuit "has

long stated that 'a federal court cannot impose liability on individual defendant school districts on the basis of a general inverse respondeat superior theory holding them presumptively responsible for actions of the state or another governmental entity.'" *United States v. Texas (Hearne)*, 457 F.3d 472, 483 (5th Cir. 2006) (quoting *Lee v. Lee County Bd. of Educ.*, 639 F.2d 1243, 1256 (5th Cir. 1981)). Consequently, where a school district "was not a party defendant to the original litigation that resulted in Order 5281, it cannot be condemned for violating the Order without a finding that it intentionally engaged in segregative conduct." *Hearne*, 457 F.3d at 483.

The *Samnorwood* court found that neither of the two school districts at issue had "ever been found to have discriminated against students o[n] the basis of their race or ethnicity" and that "TEA does not (and did not) investigate or conduct a hearing to determine whether a particular transfer was accepted or denied due to a segregative intent on the part of a sending or receiving school district before imposing sanctions on a school district." 533 F.3d at 268. Absent such a finding of intentional discrimination, it is, therefore, plain under Fifth Circuit precedent that, because neither school district was an original party to the 1970 litigation, they could not be sanctioned for their failure to report the transfers at issue.[3]

If the *Samnorwood* court had stopped with this finding, the court's decision would have been unremarkable. The court, however, determined not only that the two school districts could not be sanctioned, but also that the two school districts "shall no longer be *subject to* the Modified Order's student transfer provisions or TEA's regulations promulgated to enforce those provisions." *Id.* at 269 (emphasis added). Thus, not only could TEA not sanction these two school districts in this

---

[3] Accordingly, in enforcing the Modified Order against non-party school districts, TEA cannot sanction such school districts absent a finding of intentional discrimination. This is not to say, however, that such non-party school districts are wholly exempt from the Modified Order's provisions or that TEA is not required to monitor such non-party school districts in accordance with the Modified Order.

instance, but TEA cannot now be required under the Modified Order to even monitor student transfers involving these school districts. However, contrary to Defendants' assertions that the Fifth Circuit's conclusion was premised solely on the fact that the two school districts were not parties to the original 1970 litigation and had not been found to have engaged in segregative conduct, also central to the court's decision was the fact that the two school districts had voluntarily desegregated well before the 1970 litigation. In determining that the Modified Order could no longer require TEA to enforce its student transfer provisions against the two school districts, the court stated:

> While it is undisputed that TEA funded some segregated schools at the time the Modified Order was entered, that does not empower the district court to force TEA to impose a remedy on these two School Districts (*neither of which had been segregated for years prior to filing of the suit in which that order was entered*).

*Id.* at 268-69 (emphasis added). Accordingly, the court limited its decision to

> only hold[] that the prophylactic provisions created by the Modified Order to remedy the segregative conduct on the part of TEA and all-black schools in East Texas should not be imposed *on these two panhandle school districts that had long previously already desegregated and have never since been found to have acted with segregative intent.*

*Id.* at 269 (emphasis added).

Furthermore, the *Samnorwood* court's focus on the fact that these two school districts were unitary prior to the 1970 litigation makes eminent sense. As the court stated: "Had the School Districts been a party to the original 1970 litigation, the district court would not have been able to impose a remedy policing their student transfers because they were not (and had not been for more than three years before the suit was filed) segregating students." *Id.* On the other hand, school districts that were not unitary prior to the 1970 litigation were part of the dual-school system in Texas and, therefore, properly subject to the Modified Order and TEA's monitoring thereunder.

In fact, other than in *Samnorwood*, the Fifth Circuit has never before held that non-party school districts were wholly exempt from the provisions of the Modified Order, even when the appellate court found that non-party school districts could not be sanctioned under the Modified Order absent evidence of discriminatory intent. In *United States v. Gregory-Portland Indep. Sch. Dist.*, the Fifth Circuit reversed an order of this Court requiring busing of Mexican-American students throughout a non-party school district in South Texas. 654 F.2d 989, 1005-07 (5th Cir. 1981). Although the Fifth Circuit determined that the non-party school district could not be sanctioned by TEA pursuant to the Modified Order without a finding of discriminatory intent, the appellate court did not hold that the school district was wholly exempt from the requirements of the Modified Order and TEA's monitoring thereunder. *Id.* at 997-99, 1005-07. Likewise, in *Hearne*, the Fifth Circuit overturned an injunction of this Court–entered pursuant to the Modified Order–which barred a non-party school district from accepting white transfer students and TEA from funding such transfers. 457 F.3d at 474, 484. Again, although the Fifth Circuit found that the non-party school district "may not be exposed to liability for violating an order to which it was not a party without evidence of [its] intentional acts of segregation," *id.* at 482, the court did not find, as in *Samnorwood*, that the TEA could not continue to monitor the non-party school district pursuant to its responsibilities under the Modified Order. Thus, the only reason that this Court can discern as to why the *Samnorwood* court took the further step of exempting the school districts in that case from the provisions of the Modified Order is because those non-party school districts were unitary prior to the 1970 litigation.

Finally, the relief that Defendants seek would essentially eradicate the statewide responsibilities of TEA under the Modified Order. However, besides the limited holding in

*Samnorwood*, the Fifth Circuit has never indicated that the Modified Order's statewide requirements regarding TEA were infirm. Not only did the Fifth Circuit initially uphold–with minor modifications–the original remedial decree of this Court, *United States v. Texas*, 447 F.2d 441 (5th Cir. 1971), but as recently as 1998, the Fifth Circuit found that the Modified Order was still consistent with post-1971 school desegregation jurisprudence. In *United States v. Texas (Goodrich)*, after holding that this Court erred when it found that a non-party school district's proposed boundary change would violate the Modified Order, the Fifth Circuit explicitly considered whether the Modified Order needed further modification in light of intervening legal developments. 158 F.3d 299, 311-12 (5th Cir. 1998). In finding that it did not, the appellate court stated:

> The gist of post-1971 cases has been to confirm federal courts' broad remedial jurisdiction over those facets of school operations which represent or flow from an earlier *de jure* discriminatory system, while acknowledging that federal remedial jurisdiction goes only so far as the correction of the constitutional infirmity. The modified order, although written broadly, as was necessary at the outset of the court's enforcement efforts, *easily lends itself to the reading mandated by the Supreme Court*.

*Id.* at 311 (citations omitted) (emphasis added). The court further noted:

> [I]n the context of this old case and the significant clarifications of school desegregation law that have occurred in the quarter-century since the modified order was issued, the [district] court should have been wary of enforcing its order if the court perceived a significant gap between the order and ensuing legal developments. This error, of course, is irrelevant, where, as here, no such gap appears when the modified order is properly interpreted.

*Id.* at 312.[4]

---

[4] This is not to say that the Fifth Circuit has not expressed hostility and impatience with the Modified Order. *See Hearne*, 457 F.3d at 475 ("Today, Texas public school districts continue to expend considerable resources complying with TEA's directives pursuant to the now-antiquated Order, yet the State has not moved to terminate it."). It is only to say that despite the fact that the Fifth Circuit may consider the Modified Order "antiquated" or "timeworn," it has not heretofore impugned the statewide aspects of TEA's responsibilities thereunder.

Given this recent affirmation of the Modified Order and its statewide application and the narrow holding of *Samnorwood*, this Court will not make the drastic changes sought by Defendants absent more explicit direction from the Fifth Circuit or Supreme Court. If Defendants seek to eliminate the statewide duties of TEA under the Modified Order, they should present evidence to this Court that they have complied in good faith with the desegregation decree from the time it was entered and have eliminated the vestiges of past discrimination to the extent practicable. *See Freeman v. Pitts*, 503 U.S. 467, 491-92 (1992).

V.

This Court, however, recognizes that the holding of *Samnorwood* compels the conclusion that school districts similarly-situated to the school districts in *Samnorwood* "shall no longer be subject to the Modified Order's student transfer provisions or TEA's regulations promulgated to enforce those provisions." 533 F.3d at 269. Furthermore, given that TEA cannot enforce the Modified Order's student transfer provisions against the two school districts in *Samnorwood*, and others similarly situated, the Court finds no reason why TEA should be able to hold those districts to the Modified Order's other requirements regarding school district boundaries, transportation, extra-curricular activities, faculty and staff, student assignment, curriculum and compensatory education, complaints and grievances, and notification. Accordingly, TEA shall no longer be required to enforce the provisions of the Modified Order against school districts similarly-situated to those in *Samnorwood*—that is, school districts that: (1) were not parties to the original 1970 litigation; (2) were unitary prior to the commencement of the 1970 litigation; and (3) have never since been shown to have attempted to resegregate or act with segregative intent. The Court, thus,

remains open to further proceedings to determine precisely which school districts are similarly-situated and affected by today's decision.[5]

SIGNED this 17th day of December, 2008.

William Wayne Justice
Senior United States District Judge

---

[5] It should be noted that this Court's decision today in no way impacts or alters this Court's July 24, 2008, decision to grant Plaintiff-Intervenors' Motion for Further Relief, which is currently on appeal before the Fifth Circuit. Because this Court's July 24, 2008, decision was based on its conclusion that Defendants' administration of the state's program for educating LEP students violated the Equal Education Opportunity Act, (Docket No. 735 at 49), the Court's decision today granting in part Defendants' motion to modify the Modified Order has no impact on that determination.